LETOURNEAU *v*. ERICKSON.

1. EMINENT DOMAIN—HIGHWAYS AND STREETS—BOUNDARIES—IN-
CONSISTENT VERDICT.

Where the highway commissioner filed a petition to con-
demn a public highway along the boundary line between
two sections of land two rods on either side of the said
line which formed the boundary between respondent and
his neighbors, and where, at the trial, a contest arose as
to the true position of the quarter post and of the sec-
tion boundary, upon the testimony showing surveys made
by different parties, and the jury found that the survey
as made or claimed by one surveyor was correct but
awarded damages on the basis of another survey, for 4½
acres of land, although the parcel as set forth in the peti-
tion was two rods wide on the east side of the section
line, and 160 rods long, containing only two acres, the
verdict was inconsistent and must be reversed on error.

2. HIGHWAYS—COMMISSIONER OF HIGHWAYS—PETITION.

The jury in eminent domain proceedings, on appeal from
a verdict and award for taking appellant's property for
a highway, has authority under the statute (Act No. 283,
Pub. Acts 1909; 1 How. Stat. [2d Ed.] §2173 *et seq.*),
to determine disputed boundaries involved in the taking
of a part of the lands, where a controversy arises out of
a disagreement as to the location of the section line by
the surveyors.

3. SAME—SECTION LINE, LOCATION.

Where the question of locating the correct section line at
one end was in dispute, and was properly raised in the
court below, appellant was entitled to have the issue tried
by the jury, and settled, before steps were taken to open
and improve the highway.

Error to Bay; Collins, J. Submitted June 22, 1914.
(Docket No. 113.) Decided October 2, 1914.

Eminent domain proceedings by Carl Erickson,
highway commissioner of the township of Greenfield,
Bay county, against Nelson Letourneau and others
for the taking of private property for a public high-
way. From a determination of the commissioner lay-

ing out the highway and assessing damages, the respondent named appealed to the township board and later to the circuit court. Judgment establishing the highway; respondent brings error. Reversed.

*Charles W. Hitchcock,* for appellant.

*Kinnane & Lane,* for appellee.

STEERE, J. This case involves proceedings taken under Act No. 283, Public Acts of 1909 (1 How. Stat. [2d Ed.] § 2173 *et seq.*), to lay out a highway in the township of Garfield, Bay county, Mich., under an application. dated February 11, 1912, signed by a proper number of qualified freeholders, describing the proposed highway applied for as follows:

"Commencing at the northwest corner of section 1 of said township of Garfield, being town 16 north, range 3 east, and running thence south along the section line between sections 1 and 2 of said township to where it intersects the east and west quarter line of sections 1 and 2 of said township."

This called for a highway one-half mile in length running north and south between the north halves of the two sections mentioned. Upon this application the township highway commissioner proceeded to lay out such highway according to the provisions of said statute. Appellant, an adjacent landowner, being dissatisfied with the commissioner's determination, appealed to the township board, where the action of the commissioner was affirmed, with a modification increasing appellant's awarded damages, whereupon he appealed to the circuit court of Bay county. On trial of the matter in said court by jury a verdict was rendered affirming the decisions of the commissioner and township board in laying out said road, but again increasing his award of damages, the material part of said verdict as recorded being that said jury—

"Say upon their oath that the highway as laid out and established by the highway commissioner of Gar-

field township through the lands of appellant is necessary and they appraise and assess the damages of said appellant for the land taken for such highway and the moving of his house, fence, and buildings therefrom at the sum of $335."

A motion for a new trial was denied.

None of the testimony is included in the record, which contains the pleadings, recorded proceedings, charge of the court, minutes of the stenographer at the time of taking the verdict, and certain exhibits. Appellant's assignments of error relate to the charge of the court and denial of motion for a new trial. The facts in the case must necessarily be gathered from the pleadings, exhibits, charge of the court, reasons for denying the motion for a new trial, and undisputed statements in the briefs of counsel.

Appellant was represented by counsel at the time of appealing to the township board from the action of the highway commissioner, and filed written reasons for his appeal which, condensed, are: That the commissioner had no jurisdiction to make any determination in the matter, and all his proceedings are illegal and void; that he attempted to settle boundaries without authority; that he made no legal tender of damages to appellant; that the survey of the proposed highway as made by the county surveyor and attached to the return of said commissioner is not in accordance with law; that the route of the proposed highway is not on the section line between sections 1 and 2 in said township; that said route is a confiscation of appellant's property without due remuneration therefor, his damages being more than $500, and that said highway could be laid out without cost to the township for right of way "by deflecting the route of said road a short distance to the east at the extreme south part of appellant's land, to the point or place where appellant claims the section line really is, and where the

government stake shows it to be." To what extent these various reasons were urged before the court upon the trial can only be inferred from the present contentions of counsel, the charge of the court, and reasons given by the court in denying the motion for a new trial. This record contains the minutes of only one survey of the highway made by Calvin Thornthwaite, county surveyor, under the statute at the instance of the highway commissioner, as follows:

"Commencing at the post in the north boundary of township sixteen north, range three east, between sections one and two, thence south one degree west 19.35 chains to the 1/8 post, thence continuing on same course, 20.25 chains to the 1/4 post between sections one and two and end. Said highway to be four rods in width and the right of way to be two rods in width on each side of said line.

"Dated this fourth day of March, A. D. 1912.
                    "CALVIN G. THORNTHWAITE,
            "County Surveyor, Bay County, Michigan."

It appears from the charge of the court and undisputed statements of counsel that there was a contention over where this line really was, on the land, other surveys having been made by surveyors named Bass, Johnson, Kelly, Turner, and Schindehette, all, as we infer, corresponding with that of Thornthwaite except Kelly's. The line as laid out by the highway commissioner was spoken of as the "Johnson-Turner-Thornthwaite Survey." The Kelly survey bore more to the east than the other, as it ran south, and ended farther south. Maps of both surveys appear to have been in evidence before the jury, though not in the record before us. Both surveys ran from the same starting point, being the agreed corner post at the north end of the section line between sections 1 and 2, running thence south to the claimed quarter post between said sections, which they did not locate at the same spot.

It is said in the brief of counsel for appellant that the Kelly quarter post is "at a point approximately 91 feet east and 53 feet south of the post or point which the township claims to be the terminus of the road." In charging the jury the court recognized this as an important issue of fact, and in submitting it devoted approximately seven of the ten printed pages of the charge to that subject, saying, among other things:

"Now, the same questions are before you that were before the highway commissioner and were before the township board, and these questions are these: *First,* was it necessary for the establishment of that highway on the line where it was laid out, and that question is a question of fact for you to decide. *Second,* if you find that there is a necessity for a highway, then you must determine the question—the disputed question —as to the line and determine the amount of damages. * * *

"Now, gentlemen of the jury, it appears right in the start of this case that there is a conflict between the opposing parties, that is, between Mr. Letourneau, the appellant in this case, and the highway commissioner, Mr. Erickson, representing the township in this case; that is, that there is a conflict as to the location of the section line between sections 1 and 2 and the east and west quarter line running through sections 1 and 2, and there have been described to you surveys made by Mr. Bass, Mr. Johnson, Mr. Kelly, Mr. Turner, and Mr. Schindehette. These various surveys and the lines that they have laid out and the work that they have done have been laid in evidence before you, and I will give you the law governing the surveys, and these matters will have to be considered by you. * * *

"But that does not meet the question altogether, because it is the claim of the township, or of Mr. Erickson representing the township, that Mr. Letourneau is entitled to but two rods, the two rods immediately west of the Johnson and Thornthwaite line. It is the claim of Mr. Letourneau that that does not give him all the land that he is entitled to because he is entitled to claim, as he says, as far east as the line

laid out by Mr. Kelly, so that the controversy as to the amount of land depends upon these various lines. If the Johnson-Turner-Thornthwaite survey is correct, then it is two rods east and west and the length of the 80. If the Kelly line governs, or the Kelly survey, then the true line is farther to the east on the east side, and farther to the south on the south side, or, in other words, Mr. Letourneau claims that he is entitled to land to the east of this line and to the south of the line.     *     *     *

"Now, gentlemen, I want to fix this point in your minds in considering these different surveys. In the first place, the government laid out that land, surveyed it and subdivided it, and the question is all referred back to the original work of the government. There is no such thing as changing a corner in law or changing a line. The law does not recognize but one corner and one line. There is only one correct line according to the government survey, and only one correct corner according to the government survey, and the thing to do and the question to get at is what the line or lines actually were as laid out by the government.
*     *     *     *     *     *     *     *     *     *     *     *

"The question of Mr. Kelly's survey, and his placing of the post that he claims at the quarter post between sections 1 and 2 comes before the jury in this case as a question of fact, and it is for you to determine from all of the evidence in the case whether or not the so-called Kelly quarter post was correctly or erroneously located.·
*     *     *     *     *     *     *     *     *     *     *     *

"As to which of these surveys is correct, the Kelly survey or the Johnson-Turner-Thornthwaite survey, is a question of fact for you to decide from all the evidence that has been put before you under the instructions of the court.
*     *     *     *     *     *     *     *     *     *     *     *

"Now, gentlemen, as I have said before, the first question for you to take up is the question of necessity. If you find that the road is not necessary, that will end the case. If you find that it is necessary, then I advise you to take up the question as to which of these surveys is correct, and in that way settle the amount of land which will be taken for this highway. After

you have settled the amount of land, if you come to that point, then I advise you to take up and consider the question of damages which Mr. Letourneau shall be allowed on account of the establishment of the road."

Much more was said to the jury as to their duties in determining the true line.

When the jury returned into court to render their verdict the foreman said, in response to the usual question:

"We have agreed that the road is a necessity; we also agreed that the Kelly stake is the proper stake, and we also find that it is necessary to take 4½ acres of land at $30 per acre, $135, the moving of the house at $125, the outbuildings, $40, and the fence, $35, a total of $335."

Whereupon the following took place:

"*The Court:*   That seems to be full and clear.

"*Counsel for Appellant:*   All I can say, the verdict of the jury finding the Kelly stake to be correct is probably—

"*Counsel for Appellee:*   That is not a question submitted to the jury.

"*The Court:*   That does not make any difference.

"*Counsel for Appellee:*   They passed upon two questions, one is that the road is a necessity, and the damages or compensation, $335.   *   *   *

"*Counsel for Appellant:*   Let me have this on record. The jury finding that the Kelly stake is correct, it would seem to me that the Thornthwaite stake is not correct, and that the road is not on the proper route.

"*The Court:*   Well, that is not a question you can raise now.

"*Counsel for Appellant:*   I want the record, is all.

"*The Court:*   Gentlemen of the jury, you have heard the verdict as announced by your foreman.   Is that your verdict?

"*The Jury:*   Yes.

"*The Court:*   So say you all, gentlemen of the jury?

"*The Jury:*   Yes, sir.

"*The Court:* The material parts are first, that the road was a necessity, and you all agree to that?

"*The Jury:* Yes, sir.

"*The Court:* Second, that the total amount of Mr. Letourneau's damages is $335. You all agree to that?

"*The Jury:* Yes.

"*Counsel for Appellant:* Thirdly, that the Kelly stake is correct.

"*The Court:* I have not said anything about that.

\*   \*   \*

"*Counsel for Appellant:* I would like to have—

"*The Court:* That is already in the case, and once in it is enough."

The court then discharged the jury.

Before the verdict was formally entered counsel on each side prepared proposed forms for journal entry which they desired adopted by the court; that of appellee being substantially the one already quoted from in part; that of counsel for appellant particularly including the statement "that the Kelly stake is the proper stake."

We think this record shows conclusively that three questions of fact were submitted to the jury, the necessity, the true line, and the damages. The jury answered all three. The court appears to have regarded the second, to which most of the charge was devoted, as not of controlling importance, material only in connection with the measure of damages, and entered a verdict and judgment on the other two.

In denying the motion for a new trial the court said in part:

"The identity and the place of the piece of land 4 rods wide by 80 (160) rods long to be appropriated there is no reasonable question about. The actual controversy in this case was the question of necessity, and as to how much of this piece of land 4 rods wide by 80 (160) rods long belonged to Mr. Letourneau."

We must assume this means the identity and place

indicated by the plat and minutes of survey made by
Thornthwaite, the county surveyor, and made a part
of the return by the commissioner on laying out the
highway, for if the identity and place indicated by
the Kelly survey was taken into consideration, there
was a question between two places, in relation to which
the measure of damages varied materially.

But upon any theory which the record before us
will support we are unable to conceive how a straight
highway four rods wide and one-half mile long laid
out upon and extending two rods wide on each side
of a section line, which is the east boundary of appel-
lant's 80 acres of land, can take from him more than
2 acres, wherever the true line might be. The docu-
mentary evidence, charge of the court, and statements
of counsel seem to show without question that appel-
lant owned the E. ½ of the N. E. ¼ of section 2, and
two men, named Johnson and Monsion, who deeded
to the township the right of way on their side of the
line, for $1 each, owned the W. ½ of the N. W. ¼
of section 1, and that the proposed highway four rods
in width was to be laid out along the north half
of the section line running between said two sections,
the right of way to be two rods in width on each side
of said line. When the jury determined that the Kelly
line was the true section line, but assessed damages
for a highway laid out on the other line and not on
the true section line, finding it necessary to take 4½
acres of appellant's land for said highway, they ren-
dered an inconsistent verdict, unwarranted by either
the facts or law of the case. Eliminating all question
or consideration of the Kelly survey from the case and
recognizing the highways as correctly located by the
Thornthwaite survey, the verdict appropriates 2½
acres of appellant's land for highway purposes in ex-
cess of the quantity authorized.

Aside from the validity of the statutory steps taken by the commissioner to lay out a highway, which as a rule involves only questions of law for the court, to be determined from the records and undisputed facts, the usual and paramount issues for the trial are public necessity for the highway and the damages which should be awarded to those whose property is taken. It becomes evident at once, as was graphically illustrated in this case, that before a jury can understandingly determine and justly award damages, they must know what land is included within the right of way and necessary to be taken. In one case the road might so invade the adjacent owner's curtilage, taking fences, orchards, buildings, and other valuable improvements, as to result in heavy damage, while in another case, though but a short distance away, it might take only unimproved or unoccupied land and the damage be comparatively slight.

Either the jury should have been positively instructed that the established highway took the piece or strip of land as marked and laid out according to the survey made a part of the return of the commissioner, which survey could not be questioned and must alone be considered in awarding damages, or that, the location being in dispute, the jury must first determine from the conflicting evidence the true line and location of the road, and then assess damages with reference to the land so taken. In the latter case, after the jury determined the identity of the land within the right of way and assessed appellant's damages with reference to it, that strip of land in law and in fact became the location where the road must run; therefore the finding of the jury on that question became a material part of the verdict. A jury could not determine the true location of the road to be in one place for one purpose and the commissioner or court determine it to be in another place for another purpose.

These proceedings are purely statutory. The provisions for appeal might seem to suggest in the first instance, as held by the trial court, that only the two questions of necessity and damages were open for consideration on appeal.

Section 8 of said Act No. 283 authorizes an appeal from decisions of the township board. The pertinent parts of that lengthy section, amongst other things, provide:

"Any party or parties dissatisfied with the determination of such township board, either as to the value of the property taken or as to the determination upon the necessity for laying out, altering or discontinuing a highway, when the amount involved or damages claimed exceeds the sum of three hundred dollars, may appeal therefrom to the circuit court for the county in which said land is situated, and a return may be compelled and the same proceedings shall be had thereupon, as near as may be, and with a like effect as in cases of appeal from judgments rendered before justices of the peace, * * * and the said circuit court shall also have full power and jurisdiction over said proceedings to hear and determine the same and render judgment therein, as if the said proceedings had been originally commenced before the said circuit court. And either party to said proceedings on said appeal shall be entitled to have the issue in such proceedings tried by a jury, as in ordinary suits in said court."

It is to be borne in mind that this road was intended to be and purports to be laid out one-half mile in length on a section line running south from the north section corner post between sections 1 and 2 to the quarter post, an authentic, official government survey which had once been made and marked, and of which public record existed. The petition, return of the commissioner, and all the surveys are directed to and in harmony with that proposition. The record contains no suggestion to the contrary. The highway commis-

sioner had authority to lay out a highway on this line without a petition or application from any one. Section 1 of said act, subdivision 4. The purpose of the survey was not to run a new line for a highway, but to relocate on the ground the old government survey. The location of one end of the old line was in dispute, and that question was timely raised by appellant. All the surveys in evidence were directed to the same end and claimed to have done exactly the same thing, retraced the old section line from the section corner post, which was not in dispute, to the quarter post half a mile south, which was in dispute. This raised an issue of fact in the proceeding, which appellant was entitled to have tried by jury and settled before steps were taken to open and improve the highway. We think by fair construction the statute authorized this, and that such construction is in avoidance of multiplicity of suits and protraction of litigation, for otherwise the aggrieved party must be relegated to a subsequent action of trespass or in ejectment or a suit for an injunction in order to determine the question.

In *Hartz* v. *Brown*, 165 Mich. 660 (131 N. W. 75), it is said this statute furnishes a complete and adequate remedy by appeal to the circuit court. It would be inadequate and incomplete if the question of where the true line was, when an issue of fact, could not be finally determined between the contesting parties, on an appeal to be tried "as if the said proceeding had been originally commenced before the said circuit court."

For the reasons stated, the case is reversed and a new trial granted.

McAlvay, C. J., and Brooke, Kuhn, Stone, Ostrander, Bird, and Moore, JJ., concurred.